

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Purple case iPhone Cellular Phone
Case Number: SYS-23-03-0258
("Target Device 2")

Case No. **23MJ1172**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the  Southern  District of  California , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8, USC sec. 1324 | Alien Smuggling Conspiracy |

The application is based on these facts:
See Attached Affidavit of CBP Enforcement Officer Ramon A. Galindo, U.S. Customs and Border Protection, incorporated herein by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Ramon A. Galindo, U.S. Customs and Border Protection
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by  telephone  *(specify reliable electronic means)*.

Date: 03/31/2023

*Judge's signature*

City and state: San Diego, California     Hon. DAVID D. LESHNER, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A-2

PROPERTY TO BE SEARCHED

The following property is to be searched:

    Purple case iPhone Cellular Phone
    Case Number: SYS-23-03-0258

**("Target Device 2")**

**Target Device** is currently in the custody of the Department of Homeland Security, Customs and Border Protection, 720 E. San Ysidro Blvd., San Ysidro, CA.

# AFFIDAVIT

I, Ramon A. Galindo, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

> Gold case iPhone Cellular Phone
> Case Number: SYS-23-03-0258
>
> ("**Target Device 1**")
>
> Purple case iPhone Cellular Phone
> Case Number: SYS-23-03-0258
>
> ("**Target Device 2**")

the ("**Target Devices**"), as further described in Attachment A-1 and A-2, and to seize evidence of crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrants relates to the investigation and prosecution of Jesus Martin BARRERA (D1) and Maria Delrefugio GUZMAN-Barrera (D2) for conspiracy to transport aliens. The **Target Devices** are currently in the custody of Department of Homeland Security, Customs and Border Protection, 720 E. San Ysidro Blvd., San Ysidro, CA.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient

1

probable cause for the requested warrant and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

## TRAINING AND EXPERIENCE

4. I have been employed by U.S. Customs and Border Protection since 2003 and am currently assigned to the San Ysidro Criminal Enforcement Unit. I graduated from the CBP Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a CBP Officer, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work

in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8.  The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

3

9. Based upon my training, experience, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

  a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

  b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

  c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

  d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11.    On March 22, 2023, at approximately 12:20 a.m., Jesus Martin BARRERA (D1), a United States Citizen, made application for admission into the United States from Mexico at the San Ysidro, California Port of Entry as the driver of a vehicle bearing California license plates. In the vehicle with D1 was Maria Delrefugio GUZMAN-Barrera (D2), who was seating in the back seat of the vehicle, and a female sitting in the front passenger seat later identified as Mayra Isenia VILLALOBOS-Ruiz (Material Witness). Before a United States Customs and Border Protection (CBP) Officer, D1 presented a California Driver's License (DL) and a birth certificate as his entry document, another California DL on behalf of D2 and a United States passport card bearing the initials of A.J.G. on behalf of VILLALOBOS as her entry document. D1 stated he was going to Los Angeles, California with nothing to declare after donating baby articles to family members in Tijuana, Mexico. The CBP Officer conducted a facial recognition of the ID presented and all occupants of the vehicle and noticed that VILLALOBOS did not look like the photo on the passport card presented on her behalf. VILLALOBOS stated that she was born in Mexico after being asked by the CBP Officer but suddenly changed her answer to Chula Vista, California. VILLALOBOS stated that she lived in San Jose, California and that she had gone to school there. The CBP Officer suspected that VILLALOBOS was not the legal owner of the document provided on her behalf, therefore she was referred to secondary for further identity verification.

12. In secondary, it was determined that the front passenger was not the rightful owner of the document presented on her behalf. During the secondary inspection, the front passenger stated that her real name was Mayra and that she had been apprehended three times attempting to cross the border into the United States. Biometrics were taken utilizing the Integrated Automated Fingerprint Identification System which identified her Mayra Isenia VILLALOBOS-Ruiz, a citizen and national of Mexico without documents to enter the United States and is now held as a Material Witness.

13. D1 was advised of his Miranda Rights on March 22, 2023, at approximately 0339 hours and elected to make a statement. D1 stated that his sister is the registered owner of the vehicle and that he only came to a place in Tijuana called Colonia Libertad to donate baby articles to his Goddaughter known as "Abigail". D1 stated that while he was in Abigail's home, she asked him if he could give Material Witness a ride to her home in the United States. D1 stated that Material Witness was part of the family and had seen her many times when traveling to Tijuana at Abigail's home and that he also saw her once in the United States at his sister's home about a year ago.

14. During a video-recorded interview, Material Witness stated she is a citizen of Mexico by birth in San Martin, Jalisco, Mexico with no legal entitlements to enter the United States. Material Witness stated her friend made the smuggling arrangements with an unknown person, and Material Witness did not know how much she was going to be charged to be smuggled into the United States. Material Witness stated that she does not know D1 nor D2, and that she was picked up at the hotel that she was staying at by an unknown male, who provided her with the US passport card they presented on her behalf. Material Witness stated that she was taken to a non-residential area, were she got inside D1 and D2's vehicle. Material Witness stated that neither D1 nor D2 spoke to her during the whole trip, and she could not understand them because they only were speaking

in the English language. Material Witness stated she was traveling to Los Angeles, California.

15. The **Target Device 1** was found in BARRERA's (D1) pocket when searched. The CBP Officer in vehicle primary saw **Target Device 2** in GUZMAN-Barrera (D2's) hand while she sat in the back seat of the car during primary inspection. The **Target Devices** were subsequently seized.

16. Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that the Defendants were using the **Target Devices** to communicate with others to further the smuggling of illegal aliens into the United States. Further, in my training and experience, alien smugglers may be involved in the planning and coordination of transporting and smuggling events in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the aliens. Based on my training and experience, it is also not unusual for individuals, such as Defendants, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on February 21, 2023, up to and including March 22, 2023.

## METHODOLOGY

17. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is

subscribed and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones, tablets, and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the

8

identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

20. Law enforcement has previously attempted to obtain the evidence sought by this warrant through the owner's consent and consent was not given.

## CONCLUSION

21. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence of alien smuggling violation of Title 8, United States Code, Sections 1324.

22. Because the **Target Devices** were seized at the time of BARRERA's and GUZMAN-Barrera's arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Devices**. As stated above, I believe that the appropriate date range for this search is from February 21, 2023, through March 22, 2023.

23. Accordingly, I request that the Court issue warrants authorizing law enforcement to search the item described in Attachment A-1 and A-2, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Ramon A. Galindo, CBP Enforcement Officer

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 31st day of March, 2023.

_____
HON. DAVID D. LESHNER
United States Magistrate Judge

9